UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

DAVID ALEXANDER YOUNG,            CASE NO. 05-11355-WSS

    Debtor.                                          Chapter 7

_____

ZURICH AMERICAN INS. CO. as subrogee
of RELI, INC.,

    Plaintiff
v.                                                         ADV. PROC. NO. 10-00036

DAVID ALEXANDER YOUNG,

    Defendant.

ORDER ON SUMMARY JUDGMENT

Gabrielle E. Reeves, Counsel for the Plaintiff
J. Willis Garrett, Counsel for the Defendant

      This matter came before the Court on the cross-motions for summary judgment filed by Plaintiff and Defendant. The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The Court has duly considered the pleadings, briefs, evidence and arguments of counsel.

      On December 3, 2010, this Court entered a partial summary judgment in favor of Defendant David Young and against Zurich American Insurance Company, as subrogee of RELI, Inc. on the issue of whether Zurich's claim for fraud was barred by Alabama's two year statute of limitations. The Court adopts the findings of fact in that order and restates and supplements

1

them as set forth herein.

## STATEMENT OF FACTS

The Defendant, David Young, sold his home to Aaron and Sharon Fruh ("the Fruhs") on or about June 4, 2004. At the time of the sale, SouthTrust Bank held a first mortgage on the property, and AmSouth Bank held a second mortgage on the property. The second mortgage was given to secure certain loans to Precision Mills Fabrication, Inc.[1] which filed bankruptcy on December 16, 2004. The Fruhs purchased title insurance from Stewart Title and Guaranty ("Stewart"), and Stewart hired RELI, Inc. to conduct the title search. The sale price for the home was less than the balance of the first mortgage, and Young signed a personal promissory note to SouthTrust for the deficiency. Young received no proceeds from the sale.

Young conveyed the property to the Fruhs by warranty deed, and by signing the deed, Young represented that the property was "'free and clear of all encumbrances'" and "that he would 'warrant and . . . forever defend the title to said property'". He also executed an indemnity affidavit in which he represented that no liens or encumbrances existed against the property and that he would indemnify RELI for any loss it may incur under its title policy. In a deposition taken in connection with this adversary proceeding, Young testified that he had forgotten about the mortgage. He also stated:

> ..I had a lot of issues in my life at that point, financial issues with other debts that I had incurred, and I was in heavy - - I wanted to dump the house because it was costing me a lot every month and I was in negotiations with SouthTrust to let me sell the house.

Young's Precision Mills business partner, Michael Black, testified by affidavit that he and Young discussed Precision Mills' efforts to refinance its commercial loans, including the AmSouth loan,

---

[1] Mr. Young was a principal of Precision Mills Fabrication at the time that the second mortgage was given.

2

numerous times prior to the summer and fall of 2004.

The title report did not reveal AmSouth's second mortgage on the property. In January 2005, the Fruhs received a letter from AmSouth indicating that the mortgage was in default and subject to foreclosure. In February 2005, AmSouth advised Stewart that the second mortgage was in default.

On or about March 10, 2005, Young filed the chapter 7 bankruptcy petition. AmSouth was listed as a creditor in Young's bankruptcy schedules; however, Stewart, RELI, and the Plaintiff, Zurich American Insurance Company, were not listed in the bankruptcy petition. Young received his discharge from the bankruptcy on or about May 25, 2007. Stewart paid AmSouth's claim pursuant to the title insurance policy on March 25, 2005, and filed suit against RELI to recover the payment in September 2005. A judgment was entered against RELI in 2006. Stewart and RELI resolved the claim post-judgment in a settlement agreement dated December 9, 2008. In accordance with the settlement agreement, Zurich made a $200,000 payment to Stewart as the liability insurer for RELI. Zurich, as a subrogee of RELI, filed suit against Young in the Circuit Court of Mobile County, Alabama on or about May 29, 2009 to recover the funds paid to Stewart. Young filed a motion to dismiss the case on grounds that the debt to Zurich was discharged in his bankruptcy petition. The Circuit Court granted Young's motion to dismiss in part to allow Zurich to petition this Court to determine whether RELI's claim was discharged in Young's bankruptcy proceeding. This Court granted Zurich's motion to reopen Young's bankruptcy case on or about February 9, 2010.

Zurich, again as subrogee of RELI, filed this adversary proceeding on March 29, 2010 to determine the dischargeability of the debt owed by Young based on four counts: Count I - Determination that discharge injunction does not apply pursuant to 11 U.S.C. §524(a) and §727(b); Count II- Determination for violation of 11 U.S.C. §523(a)(3)(B); Count III-Determination for violation of §523(a)(6); and Count IV- Determination for violation of 11U.S.C. §523(a)(2). The Court denied

3

Young's motion to dismiss the adversary complaint on August 27, 2010.

CONCLUSIONS OF LAW

Rule 56, as adopted by Bankruptcy Rule 7056, provides that summary judgment must be entered if the evidence presented shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of proof to show that there are no genuine issues of material fact. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994). The non-moving party must then show that an issue of fact exists. *Id.* The court must view the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Zurich contends that it is entitled to a summary judgment determining Young's debt to Zurich as non-dischargeable. It is undisputed that the debtor failed to schedule any debt owed to RELI, Inc. or Zurich. Section 523(a)(3)(B) excepts from discharge a debt that is:

> (3) neither listed nor scheduled under §521(1) of this title, with the name if known to the debtor, of the creditor to whom such debt is owed in time to permit - ...
> > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. §523(a)(3)(B).

Count IV of Zurich's complaint seeks to except the discharge under §523(a)(2):

for money, property, services, or an extension, renewal or refinancing of credit, to the

4

extent obtained by -
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's insider financial condition; .

Thus, a debtor's failure to schedule a debt properly will result in that debt's exclusion from discharge where the debt is obtained by fraud or intentional design, unless the creditor had notice or actual knowledge of the bankruptcy. The debtor has the burden of proving that a creditor had notice or actual knowledge of the bankruptcy proceeding. *Matter of Johnson,* 208 B.R. 746, 750 (Bankr. S.D. Ga. 1996); *In re Haga,* 131 B.R. 320, 327 (Bankr. W.D. Tex. 1991).

According to Young's deposition, he does not dispute that neither Zurich nor its subrogee, RELI, received formal notice of his bankruptcy. Further, Young has failed to produce any evidence that Zurich or RELI had any actual knowledge of his bankruptcy proceeding. To the contrary, both the affidavits of Zurich's counsel and RELI's CEO establish that neither had formal notice nor actual knowledge of the bankruptcy. Therefore, the Court must determine whether the debt falls in the category of a §523(a)(2) or (a)(6) nondischargeable obligation as claimed in Count III and IV of the complaint.

The Court will first consider Count IV in which Zurich claims that Young intentionally misrepresented in the deed that the property he was conveying to the Fruhs was "free and clear of all encumbrances." Further, he represented in an indemnity affidavit to RELI that the property had "no liens or encumbrances" against it and that he would indemnify RELI for any losses it may incur under its title policy. In the paragraph immediately above Young's signature is his sworn statement that the "affidavit is given to induce RELI, Inc. to issue its title insurance policy...".

To establish non-dischargeability for fraud, a creditor must show that the debtor

5

knowingly and with intent to deceive the creditor, misrepresented a material fact on which the creditor relied to his detriment. See *In re Demarest,* 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995) (citing *In re Kirsh,* 973 F.2d 1454 (9th Cir. 1992). It is clear that Young made a misrepresentation of a material fact. The issues are whether he intended to deceive RELI and whether its reliance was justifiable. Justifiable reliance is required under §523(a)(2)(A) for a finding of nondischargeability. *In re Vann,* 67 F.3d 277, 283 (11th Cir. 1995).

In Young's deposition, he acknowledged signing the indemnity affidavit and admitted that he had no reason to believe the AmSouth mortgage was no longer in effect at the time of closing. His excuse for failing to disclose the mortgage was he had "forgotten about it" even though AmSouth claimed over $300,000 was still due on it. He clearly had a motivation to sign the affidavit and deed as shown by his statement that he had "financial issues with other debts that [he] had incurred" and that he "wanted to dump the house because it was costing [him] a lot every month and [he] was in negotiations with SouthTrust to let [him] sell the house."

Young was one of the principals of Precision Mills Fabrication, Inc. (a company that had also filed bankruptcy), had prior experience with mortgages and was sophisticated in business matters. His rationalization that AmSouth would not have received any money from the sale because the sales price was not enough to pay off the first mortgage to SouthTrust does not excuse his express representations that no other liens existed against the property. Young knew, according to his deposition, that he had to sign the affidavit in order to sell the house, and that because he needed to "dump the house", he "obviously was going to sign" any document "in reference to selling the house." His deposition and an affidavit of Michael Black also show that he knew Precision Mills was struggling financially and could not continue making the mortgage

6

payments to AmSouth. The evidence demonstrates that he knew the AmSouth mortgage was still in existence, and that by not revealing the existing mortgage to RELI (who had mistakenly overlooked it on its title search), he could sell the house. He testified in his deposition that in June 2004, shortly after selling the house, he had a conversation with Michael Black, the other prinicpal owner of Precision Mills. Black brought up the fact that he was surprised the house sold without the AmSouth mortgage being brought up. Even if the testimony was to be believed that Young "forgot" about the AmSouth mortgage, it indicates that he chose not to contact either AmSouth or RELI. He consciously concealed the information "because they wouldn't have gotten anything." This concealment allowed Young to reduce his debt to SouthTrust and obtain a release of the mortgage, without interference from AmSouth. AmSouth could have blocked the sale by refusing to release its lien or requiring partial payment of its lien. The Court concludes from these facts that Young's actions were intentional and deliberate and were driven by his motivation to sell his house.

In order for Zurich to prevail on its §523(a)(2) claim, it must not only show that the misrepresentation was intentional, but the Court must find that the creditor actually relied upon the representations and that such reliance was justifiable. *In re Vann,* 67 F.3d 277, 283, (11th Cir. 1995). Young points to the fact that the mortgage to AmSouth was properly recorded with the Probate Court of Mobile County and was easily searchable under the defendant's name. RELI is a title agent in the business of real property title work and admittedly overlooked the recordation of AmSouth's mortgage. Young argues that Ala. Code §35-4-90 (1975) charges Zurich, as subrogee of RELI, with knowledge of the AmSouth mortgage, as a properly recorded instrument constitutes "conclusive knowledge to all the world of everything that appears on the face of the

7

instrument." *Boyce v. Cassese,* 941 So.2d 932, 943 (Ala. 2006) citing Ala. Code §35-4-90 (1975). Young argues that under Alabama law, RELI had notice of the mortgage and could not have reasonably relied upon the indemnity affidavit of the defendant.

Where a debtor's false representations take the form of non-disclosures, "it is impossible to demonstrate reliance, since to do so requires proof of a speculative set of facts, i.e. how one would have behaved had the omitted material been disclosed." *In re Demarest,* 176 B.R. 917, 921 (Bankr. W.D. Wash. 1995). Because Young's misrepresentation was a non-disclosure, in order to establish reliance under 11 U.S.C. §523 (a)(2), Zurich only needs to prove that RELI would have considered the AmSouth mortgage when determining whether to issue the title insurance on the property. *In re Apte,* 180 B.R. 223, 229 (9th Cir. 1991) citing *Demarest,* 176 B.R. at 921-22 (quoting *In re Harris,* 458 F. Supp. 238 (D. Or. 1976)). As shown in Young's deposition, he understood the meaning of the affidavit statement that no debts existed on the property other than the SouthTrust mortgage. Young also knew that RELI required him to sign the indemnity affidavit in order to sell the house.

Young did not inform RELI of the AmSouth mortgage despite his representations in the warranty deed and the affidavit that the property had no liens or encumbrances other than the SouthTrust mortgage, and that the representations were an inducement to issuing the insurance. The affidavit was required not only as an indemnity, but as a safeguard for a situation exactly like the error that happened in the title search. This benefitted Young and allowed him to pay a substantial amount on the SouthTrust first mortgage, leaving the title insurance company liable on its policy to its detriment. As a result, Zurich, as subrogee of RELI, incurred $200,000 in monetary damages upon payment of RELI's portion of the December 9, 2008 settlement

8

agreement. The Court finds that there was justifiable reliance, and that the indebtedness to Zurich, as subrogee of RELI is nondischargeable under 11 U.S.C. §523(a)(2) and (a)(3)(B).

Although the Court has found that Zurich's debt is nondischargeable, many courts hold that §523(a)(3)(B) only requires the creditor to show a "colorable" or "viable" claim under §523(a)(2), (4) or (6) and not to prove the claim on the merits. See *In re Haga*, 131 B.R. 320, 323-27 (Bankr. W.D. Tex. 1991); *Matter of Johnson,* 208 B.R. 746, 750 (Bankr. S.D. Ga. 1996); *In re Keenan*, 231 B.R. 116 (Bankr. M.D. Ga. 1999); *In re Jones*, 296 B.R. 447, 450-51 (Bankr. M.D. Tenn. 2003). Even if Zurich were unable to prove its §523(a)(2) claim on the merits, the Court also finds that it has put forth enough evidence to show a colorable or viable claim under §523(a)(2).

Young's motion for summary judgment seeks to limit Zurich's recovery to a pro-rata share of Young's bankruptcy estate. Debtor's brief refers to the case of *Ladnier v. Ladnier* in which a debtor failed to list his ex-wife as a creditor in his Chapter 7 bankruptcy proceeding. *Ladnier v. Ladnier,* 130 B.R. 335 (Bankr. S.D. Ala. 1991). In that case, the court held that an unlisted creditor is only entitled to the pro-rata share of the total amount distributed to unsecured creditors in a bankruptcy. The court, in part, based its opinion on equitable principles.

That case is distinguished from the instant case because the *Ladnier* claim dealt with §523(a)(5)(B), the exception for alimony and support from discharge. More importantly, the court decided the case under 11 U.S.C. §523(a)(3)(A). Zurich seeks to have Young's debt declared non-dischargeable under 11 U.S.C. §523(a)(3)(B) and under §523(a)(2), one of the fraud exceptions from discharge. This Court having found finding that Young's debt is non-dischargeable under §523(a)(2) for false representation and fraud, Zurich's recovery should not

9

be limited to a pro-rata share of the bankruptcy estate. See *In re Jones,* 296 B.R. 447, 449-451 (Bankr. M.D. Tenn. 2003).

Since this Court has found in favor of Plaintiff and against Defendant under §523(a)(2), it is not necessary for the Court to consider Count III, based on §523(a)(6), and therefore the Court determines that Count III is moot. With respect to Count I, in which Zurich seeks to have a declaration that the debt is a post-petition debt and therefore not subject to discharge, the evidence is undisputed that the claim of RELI arose prior to Young filing his bankruptcy on March 10, 2005. The representations were made in writing pursuant to the warranty deed and the indemnity affidavit on or before the sale of the property on June 4, 2004. Therefore, this Court finds that Zurich's debt is a prepetition debt.

Based on the foregoing, the Court finds that Plaintiff's motion for summary judgment is due to be granted as to Count II and Count IV. The Court further finds that judgment should be entered in favor of Defendant and against Plaintiff as to Count I of Plaintiff's complaint. It is hereby

ORDERED that Plaintiff's motion for summary judgment is GRANTED as to Count II and Count IV in favor of Zurich American Insurance Company, as subrogee of RELI, Inc. and against David A. Young. A judgment in the amount of $200,000 shall be entered and said indebtedness owed to Zurich by David A. Young is hereby determined to be non-dischargeable. It is further

ORDERED that Count III is MOOT;

ORDERED that debt owed to Zurich is a prepetition debt, and a judgment shall be entered in favor of the Defendant, David A. Young, and against the Plaintiff, Zurich

American Insurance Company, as subrogee of RELI, Inc., under Count I of the Complaint.

Dated:   April 5, 2011

                                                            */s/ William S. Shulman*
                                                            WILLIAM S. SHULMAN
                                                            U.S. BANKRUPTCY JUDGE